2023 IL App (1st) 211317

SIXTH DIVISION
December 1, 2023

No. 1-21-1317

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| MICHAEL W. UNDERWOOD, JOSEPH M. VUICH, RAYMOND SCACCHITTI, ROBERT McNULTY, JOHN E. DORN, WILLIAM J. SELKE, JANIECE R. ARCHER, DENNIS MUSHOL, RICHARD AGUINAGA, JAMES SANDOW, CATHERINE A. SANDOW, MARIE JOHONSTON, and 337 NAMED PLAINTIFFS LISTED IN EXHIBIT 23 TO THE SIXTH AMENDED COMPLAINT,* | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | |
| v. | No. 13 CH 17450 |
| THE CITY OF CHICAGO, a Municipal Corporation; TRUSTEES OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO; TRUSTEES OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO; TRUSTEES OF THE MUNICIPAL EMPLOYEES' ANNUITY AND BENEFIT FUND OF CHICAGO; and TRUSTEES OF THE LABORERS' AND RETIREMENT BOARD EMPLOYEES' ANNUITY AND BENEIFT FUND OF CHICAGO, | The Honorable Neil H. Cohen, Judge, presiding. |
| Defendants | |
| (The City of Chicago, a Municipal Corporation, Defendant-Appellee). | |

---

*See the appendix to this opinion for a list of the 337 named plaintiffs listed in exhibit 23 to the sixth amended complaint.

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.

Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1    The City of Chicago (City), a defendant and the sole appellee in this appeal, filed a motion in the trial court seeking an order dismissing the case against it with prejudice. The trial court granted the City's motion on September 9, 2021. In its order, the trial court quoted Justice Mikva, who had written on behalf of a unanimous appellate court: "It is absolutely law of the case that the plaintiffs have no right to receive—and that neither the City nor the Funds have any obligation to provide—any additional monetary contributions or to guarantee affordable healthcare." *Underwood v. City of Chicago*, 2020 IL App (1st) 182180, ¶ 53 (*Underwood III*). Then-appellate court Justices Cunningham and Connors concurred.

¶ 2    On this appeal, the issue is whether the trial court erred in dismissing plaintiffs' claims against the City seeking additional money and guarantees of health care. For the reasons discussed below, we affirm.

¶ 3                                    BACKGROUND

¶ 4                                   I. The Parties

¶ 5    Plaintiffs' sixth amended complaint (complaint) is the most recent complaint filed in this action. It alleges that plaintiffs are 337 participants in one of the four pension funds named as defendants. In *Underwood III*, this court described plaintiffs as follows: "Plaintiffs in the present action are past or present City employees who alleged improper diminution of pension benefits under the Illinois Constitution, breach of contract, estoppel, impairment of contract, and denial of equal protection." *Underwood III*, 2020 IL App (1st) 182180, ¶ 14.

¶ 6        *Underwood III* observed that the City, the sole defendant in the present appeal,[1] is an entity that had "provided its retirees with fixed-rate healthcare subsidies funded by city taxes." *Underwood III*, 2020 IL App (1st) 182180, ¶ 7. However, in 1987, "the City announced that it would stop providing the subsidies," and this was the start of the legal troubles that eventually led to the present suit. *Underwood III*, 2020 IL App (1st) 182180, ¶ 9.

¶ 7        Regarding the four funds who are defendants but *not* appellees, this court has observed:

"The General Assembly created four pension funds for City employees in order to administer and carry out the provisions of the Illinois Pension Code: (1) the Policemen's Annuity and Benefit Fund (Police Fund), (2) the Firemen's Annuity and Benefit Fund (Fire Fund), (3) the Municipal Employees' Annuity and Benefit Fund (Municipal Fund), and (4) the Laborers' and Retirement Board Employees' Annuity and Benefit Fund (Laborers' Fund) (collectively, Funds)." *Underwood v. City of Chicago*, 2016 IL App (1st) 153613, ¶ 3 (*Underwood I*).

The taxpayers of the City finance the funds' obligations "through a tax levy." *Underwood I*, 2016 IL App (1st) 153613, ¶ 3. According to appellants, litigation continues in the trial court over claims against the four funds.

¶ 8                              II. The 1983 and 1985 Subsidies

¶ 9        In 1983, the City agreed to provide fixed-rate health care subsidies to retired Chicago police officers and firefighters. Subsequently, the Illinois Pension Code was amended to

---

[1]Plaintiffs represent in their brief to this court that litigation continues in the circuit court concerning claims against the funds. As described below in paragraph 26, the trial court granted plaintiffs' motion for summary judgment, in part, finding that the funds had a statutory obligation under the 1983 and 1985 amendments to contract with one or more carriers to provide group health insurance for all eligible annuitants. This issue is not before us on this appeal.

include these subsidies. *Underwood III*, 2020 IL App (1st) 182180, ¶ 7 (citing Pub. Act 82-1044, § 1 (eff. Jan. 12, 1983) (adding Ill. Rev. Stat. 1983, ch. 108½, ¶ 6-164.2)).

¶ 10         In 1985, the Pension Code was further amended to include subsidies to retired municipal employees, laborers, and retirement board employees. *Underwood III*, 2020 IL App (1st) 182180, ¶ 7.

¶ 11         The 1983 and 1985 "legislation contemplated that each of the funds established for these employees"—namely, the four funds named as defendants here—"would contract with an insurance carrier to provide a healthcare plan for its retirees." *Underwood III*, 2020 IL App (1st) 182180, ¶ 7. The funds would then "use the monthly subsidies provided by the City toward the premiums for such coverage." *Underwood III*, 2020 IL App (1st) 182180, ¶ 7. If the premiums cost more than the subsidies, "the excess was to be deducted from a retiree's monthly annuity," unless the retiree renounced the coverage. *Underwood III*, 2020 IL App (1st) 182180, ¶ 7.

¶ 12                              III. The Korshak Litigation

¶ 13         When the City announced in 1987 that it was going to stop paying these subsidies on January 1, 1988, it also filed a lawsuit seeking a declaratory judgment that it did not have to pay them, which became known as the "Korshak Litigation." *Underwood III*, 2020 IL App (1st) 182180, ¶ 9.

¶ 14         Before the merits of the Korshak litigation were decided, however, the City and the funds reached a settlement. This settlement was not a permanent solution but merely an interim measure, designed to give the parties more time to reach a more lasting solution. However, if they failed to reach such a solution at the end of 10 years, the settlement returned the parties to

the same legal status that they had had on October 19, 1987, when the litigation began. *Underwood III*, 2020 IL App (1st) 182180, ¶ 10.

¶ 15    Effective August 23, 1989, the Pension Code was amended, to include the terms of this first interim settlement, including a 10-year limit. In 1997, before the time limit in the first interim agreement expired, the parties reached a second interim agreement, which was set to expire on June 30, 2003. On April 4, 2003, the parties reached a final settlement. *Underwood III*, 2020 IL App (1st) 182180, ¶¶ 10-12.

¶ 16                         IV. The Underwood Litigation

¶ 17    On July 23, 2013, plaintiffs filed a new action against the City and the four funds, which is the present Underwood litigation. *Underwood I*, 2016 IL App (1st) 153613, ¶ 12.

¶ 18    Regarding the Underwood litigation, this court has observed that plaintiffs can be divided into "four subclasses: (1) those who retired before December 31, 1987 ***, (2) those who retired between January 1, 1988, and August 23, 1989 ***, (3) those who retired on or after August 23, 1989 ***, and (4) those who were hired after August 23, 1989." *Underwood III*, 2020 IL App (1st) 182180, ¶ 14. The claims of the first and second subclasses are "essentially moot as the parties have settled." *Underwood v. City of Chicago*, 2017 IL App (1st) 162356, ¶ 46 (*Underwood II*).

¶ 19    With respect to the third and fourth subclasses, the significance of the date of August 23, 1989, is that this was the date on which the Pension Code was effectively amended to include the terms of the first interim agreement. See *Underwood III*, 2020 IL App (1st) 182180, ¶ 10.

¶ 20    This court has previously found that plaintiffs cannot "state a claim for benefits based on the 1987, 1997, or 2003 amendments to the Pension Code because the settlements giving

rise to those amendments were stopgap measures providing only time-limited benefits." See *Underwood III*, 2020 IL App (1st) 182180, ¶¶ 15-16 (describing a prior trial court ruling that was affirmed in *Underwood II*); see also *Underwood* III, 2020 IL App (1st) 182180, ¶ 46 ("In *Underwood II*, this court agreed with the circuit court that plaintiffs could not state a claim for coverage under the time-limited benefits provided for in the 1989, 1997, and 2003 settlements."). This court has found that the 1983 and 1985 amendments to the Pension Code contained no time limits and that they "protected the right to a fixed-rate subsidy" but "not a particular quantum of buying power or level of healthcare services." *Underwood III*, 2020 IL App (1st) 182180, ¶¶ 15-16. The right to subsidies extended to those in the third subclass, as well as to those in the fourth subclass "who began participating before the 2003 settlement." *Underwood III*, 2020 IL App (1st) 182180, ¶ 16.

¶ 21                                    V. *Underwood II* and *III*

¶ 22        In *Underwood II*, the appellate court affirmed the trial court's dismissal with prejudice of plaintiffs' claims for breach of contract, estoppel, impairment of contract, equal protection and violation of the special legislation clause (Ill. Const. 1970, art. IV, § 13), leaving only issues under the pension clause (Ill. Const. 1970, art. XIII, § 5).

¶ 23        In *Underwood III*, which was the last time this suit was before the appellate court, we remanded the case back to the trial court so that the trial court could consider, in the first instance, "[w]hether the pension protection clause binds the [f]unds to create or approve a healthcare plan and administer it for the retirees' benefit." *Underwood III*, 2020 IL App (1st) 182180, ¶ 50. As we noted above, litigation with respect to the funds is continuing and is separate and apart from this appeal, which concerns the City only.

¶ 24        In *Underwood III*, we answered the two certified questions as follows:

"(1) plaintiffs' motion to compel each of the [f]unds to provide its annuitants with a healthcare plan was not barred by this court's [prior] decision *** and (2) the eligibility cutoff for City employees entitled to receive the fixed-rate subsidies is June 30, 2003, the last day before the terms of the court-approved 2003 settlement were incorporated by legislative amendment into the Pension Code." *Underwood III*, 2020 IL App (1st) 182180, ¶ 62.

¶ 25                                        VI. This Appeal

¶ 26        On remand, the trial court granted the plaintiffs' motion for summary judgment, in part, finding that the funds had a statutory obligation under the 1983 and 1985 amendments to contract with one or more carriers to provide group health insurance for all eligible annuitants.[2]

¶ 27        However, the trial court further found that this obligation did not require the funds to pay subsidies in excess of those provided for in the 1983 and 1985 amendments for any group health insurance or group health plan. As noted above, these issues are not before us on this appeal.

¶ 28        The City moved for an order dismissing the claims against it. In an order granting summary judgment in favor of the City, the trial court quoted the "law of the case" language from Justice Mikva's opinion that we quoted in our first paragraph above. *Supra* ¶ 1. The trial court then found:

"it is now the law of the case that the only obligation the City has to the annuitants is to levy a tax sufficient to cover the subsidies provided for in the 1983 and 1985 amendments and then transfer the collected monies to the [f]unds. Plaintiffs do not

---

[2]This was the question that we indicated in *Underwood II* that the trial court should address "in the first instance." *Underwood III*, 2020 IL App (1st) 182180, ¶ 53.

allege, and do not contend, that the City has failed to levy the required tax or transfer the collected monies to the [f]unds."

The trial court further found that, since the City's sole obligation to the annuitants is to levy the required tax and transfer the monies to the funds, and since there was no allegation that the City was failing in this obligation, the trial court granted summary judgment for the City on September 9, 2021. The trial court also observed that it had previously denied plaintiffs' motion to file a seventh amended complaint. On October 8, 2021, a notice of appeal was filed in the circuit court, and after requests for extensions of time, this case became ready for our consideration.

¶ 29                                    ANALYSIS

¶ 30        On this appeal, plaintiffs challenge both the trial court's denial of their motion to file a seventh amended complaint and the trial court's grant of summary judgment in favor of the City. For the following reasons, we affirm.

¶ 31                        I. Motion to File Another Complaint

¶ 32        Plaintiffs' proposed seventh amended complaint would be their eighth complaint, if permitted, and plaintiffs argue that the trial court abused its discretion by not allowing them to file it. An abuse of discretion occurs when no reasonable person could take the view that the trial court took. *Meier v. Ryan*, 2023 IL App (1st) 211674, ¶ 8. In addition, a trial court's decision to deny leave to file an amended complaint will not be disturbed on review absent a clear abuse of that discretion. *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 50.

¶ 33        The most important consideration is whether amendment would further the interests of justice. *Insurance Benefit*, 2017 IL App (1st) 162808, ¶ 51. Factors to consider include the

timeliness of the proposed amendment and whether plaintiffs had prior opportunities to amend. *Insurance Benefit*, 2017 IL App (1st) 162808, ¶ 51. In *Insurance Benefit*, for example, the appellate court stated that it could find no abuse where the "parties had already been litigating the matter for nearly five years" and where the facts underlying the causes of action had been known since the inception of the lawsuit. *Insurance Benefit*, 2017 IL App (1st) 162808, ¶ 53. In the case at bar, plaintiffs have been litigating for over 10 years, they have received permission six times before to file an amended complaint, and the basic facts underlying this suit have been known to them since their suit's inception over a decade ago. Under these facts, any reviewing court would be hard pressed to find abuse. Thus, we conclude that the trial court did not abuse its discretion in denying their motion to amend.

¶ 34                                                II. Summary Judgment

¶ 35            Plaintiffs appeal the trial court's grant of summary judgment in favor of the City. Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmovant, fails to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. *Zurich American Insurance Co. v. Infrastructure Engineering, Inc.*, 2023 IL App (1st) 230147, ¶ 17; 735 ILCS 5/2-1005(c) (West 2022). Summary judgment may be an expeditious manner of disposing of a lawsuit, but it should be utilized only when the movant's right to judgment is clear and free from doubt. *Zurich*, 2023 IL App (1st) 230147, ¶ 17. On appeal, a reviewing court considers *de novo* a trial court's decision to grant summary judgment. *Zurich*, 2023 IL App (1st) 230147, ¶ 17.

¶ 36            On this appeal, plaintiffs limit their arguments to dismissal of their (1) contract and (2) estoppel claims. Thus, the dismissal of their statutory and constitutional claims, which they had made pursuant to the pension clause and the pension code, are not at issue.

¶ 37    With respect to contract, they argue that the funds had a contract with the City as the insurer which plaintiffs can sue to enforce. With respect to estoppel, they argue that representatives of the City repeatedly told plaintiffs at benefit seminars that they had lifetime health care guarantees. Based on these claims, plaintiffs seek lifetime health care from the City.

¶ 38    The bottom line here is that plaintiffs continue to seek money and health care guarantees from the City, when this court has already found that they have "no right to receive" them from either the City or the four funds. *Underwood III*, 2020 IL App (1st) 182180, ¶ 53. This court found: "It is absolutely law of the case that the plaintiffs have no right to receive— and that neither the City nor the Funds have any obligation to provide—any additional monetary contributions or to guarantee affordable healthcare." *Underwood III*, 2020 IL App (1st) 182180, ¶ 53. The words "absolutely" and "no right" are unusually strong, definitive, and unequivocal. See *Underwood III*, 2020 IL App (1st) 182180, ¶ 53.[3] Based on this strong and unequivocal finding by a fellow panel in this same case, we can find no error in the trial court's grant of summary judgment here. In light of our affirmance of summary judgment, there is no need to consider whether a class action should have been certified against the City.

¶ 39                                    CONCLUSION

¶ 40    As citizens, we are grateful for plaintiffs' service and empathize with plaintiffs' desire for affordable health care, on the one hand, and on the other hand, we understand the City's struggle to keep costs down in an era of declining population. However, the matter before us is a strictly legal one where the issues have already been decided by prior panels. To the extent

---

[3]Plaintiffs in their initial brief to this court criticized the trial court for treating Justice Simon's decision in *Underwood II* as law of the case while failing to address the much stronger language to that effect in *Underwood III*—that the trial court had quoted in its summary judgment order. Plaintiffs' initial brief cites *Underwood III* twice: once to note that the trial court was reversed in part and once to note that the *Underwood III* court was "wary of applying law of the case to bar matters not actually decided on their merits."

that a different outcome is warranted, that is a matter for a higher court or the legislature. For the reasons already explained above, we affirm the trial court's grant of summary judgment in favor of the City.

¶ 41          Affirmed.

¶ 42                                    APPENDIX

| Last Name | First Name |
|-----------|------------|
| Abbey | Leon |
| Alongi | Rosemarie |
| Anderson | Donald G. |
| Anderson | Michelle |
| Andler | Robert |
| Andruzzi | Joseph J. |
| Angelo | Thomas |
| Antol | Robert P. |
| Augustine | Lawrence |
| Azara | John T. |
| Azzaro | Donald J. |
| Baker | Madelyn |
| Banahan | Dennis M. |
| Barreto | Nelson |
| Battistella | Irene C. |
| Battistella | John |
| Bellavia | Ronald J. |
| Berman | Barry |
| Blake | Marion |
| Blanc | Curtis E. |
| Blanc | Karen A. |
| Bobko | John R. |
| Bolda | Dennis J. |
| Bonk | James R. |
| Bonke | Fred |
| Borski | Anthony E. |
| Botwinski | JoAnne |
| Boyle | Leslie |
| Breska | Victor J. |
| Brockman | Ellwood W. |
| Brosnan | Patrick |
| Cagney | Edward C. |
| Caliendo | June G. |
| Camden | Patrick T. |
| Campion | William E. |
| Canchola | Donna J. |
| Canchola | Robert A. |
| Capesius | Michael C. |
| Carlo | Patricia |
| Carr | Elaine |
| Carroll | Paul B. |
| Cervenka | Richard G. |
| Chengary | Alan |
| Clancy | Patrick M. |
| Clark | Jeanne |
| Clarke | James R. |
| Clarke | Patricia S. |
| Clepp | Kathy |
| Clisham Sr. | John E. |
| Cole | Jon |
| Conlisk III | James B. |
| Conrad | Susan M. |
| Conrad | Walter A. |
| Considine | Joseph E. |
| Conway | Carol J. |
| Conwell | Hugh |
| Corcoran | John E. |
| Cowell | Raymond M.` |
| Coyne | Michael J. |
| Cronk | Virigina M. |
| Cunningham | James J. |
| Dalton | Tom |
| Danihel | William |
| Danzl | Joseph M. |
| Davis | William B. |
| DeCola | Salvatore L. |
| DeFrancisco | Peter J. |
| DeFranza | Donald |
| DeGiulio | William |
| DeGryse | James J. |
| DeVivo | Rosalie |
| Dicks | Kenneth |
| Dickson | Robert M. |
| Dorich | Gerald |
| Dragon | Dennis |
| Drnek | Donald |
| Droba | Gerard |
| Drummond | Richard L. |
| Drust | Wayne W. |
| Dubielak | Ronald |

| 82 | Dunn | Terrence L. |
|---|---|---|
| 83 | Dunn Sr. | Lawrence J. |
| 84 | Durbak | Andres |
| 85 | Dyckman | Barbara |
| 86 | Dyckman | Louis |
| 87 | Dziedzic | Dennis |
| 88 | Egan | William G. |
| 89 | Eichler | Thomas |
| 90 | Eldridge | James |
| 91 | Engelsman | Richard |
| 92 | Eshoo | John C. |
| 93 | Evanish | Francis |
| 94 | Everett | Daniel |
| 95 | Faragoi | Thomas V. |
| 96 | Farrer | Gerald L. |
| 97 | Faust | Robert |
| 98 | Ferriter | John T. |
| 99 | Ficke | Thomas R. |
| 100 | Fields | Robert M. |
| 101 | Finlayson | Donna M. |
| 102 | Finlayson | James R. |
| 103 | Flanagan, Jr. | Thomas J. |
| 104 | Flynn | Michael C. |
| 105 | Foley | Janice |
| 106 | Foran | John K. |
| 107 | Frank | Albert M. |
| 108 | Frederick | Arthur G. |
| 109 | Frost | Barbara C. |
| 110 | Fruin | James E. |
| 111 | Glowacki | Christine |
| 112 | Glynn-Johnson | Mary |
| 113 | Gneda | Diane |
| 114 | Gogliotti | Antoinette |
| 115 | Golczak | Anthony |
| 116 | Golon | William J. |
| 117 | Golosinski | Casimer L. |
| 118 | Gorski | Steven H. |
| 119 | Gottfried | Alan J. |
| 120 | Gould | David R. |
| 121 | Gray | Curtis |

| 122 | Green | Mary |
|---|---|---|
| 123 | Gunnell | Donald L. |
| 124 | Gutierrez | George |
| 125 | Gvozdenovich | Anthony |
| 126 | Hagele | Marvin |
| 127 | Hammermeister | JoAnne Connelly |
| 128 | Hammermeister | Raymond F. |
| 129 | Harper | Juana J. |
| 130 | Harrington | Patrick J. |
| 131 | Hartford | Joseph B. |
| 132 | Hatzel | Joseph |
| 133 | Healy | John |
| 134 | Healy | Lawrence |
| 135 | Heidemann | Fred G. |
| 136 | Heyden | Fran H. |
| 137 | Hopkins | James T. |
| 138 | Horkavy | Gregory L. |
| 139 | Horne | Ross |
| 140 | Hourihane | Michael |
| 141 | Hujar | Richard A. |
| 142 | Ippolito | Joseph C. |
| 143 | Ippolito | Patricia |
| 144 | Ivanjack | Anthony J. |
| 145 | Januszyk | Donald |
| 146 | Jazdyk | Raymond |
| 147 | Jin | Tony H. |
| 148 | Johnson | Harold F. |
| 149 | Julien | Patricia Lou |
| 150 | Kann | Vivian J. |
| 151 | Karl | Joyce L. |
| 152 | Keane | Carole L. |
| 153 | Kehoe | James G. |
| 154 | Keller, Jr. | Frank J. |
| 155 | Kelly | Francis |
| 156 | Kern | George "Steve" |
| 157 | King | Richard |
| 158 | King | Walter |
| 159 | Klauba | Bennet |
| 160 | Kleidon, Jr. | Walter A. |
| 161 | Kliner | Donald C. |

| | | | | | | |
|---|---|---|---|---|---|---|
| 162 | Kliner | Helen | | 202 | Milazzo-Triggs | Catherine |
| 163 | Klodnicki | John H. | | 203 | Miller | James |
| 164 | Knight | Evelyn F. | | 204 | Miller | John F. |
| 165 | Kobel | Richard | | 205 | Minich | John |
| 166 | Kocur | Thomas M. | | 206 | Mitkal | Victor |
| 167 | Kopbenhoefer | Charles | | 207 | Montedore | Ronald P |
| 168 | Kosteris | Dimitrios | | 208 | Morgan | Charles E. |
| 169 | Kotowicz | James F. | | 209 | Morgan, Jr. | Walter J. |
| 170 | Kouchoukos | Andrew F. | | 210 | Morley | Christine |
| 171 | Kozaritz | John A. | | 211 | Morse | Robert C. |
| 172 | Krupowicz | Kenneth G. | | 212 | Mostacchio | Santo V. |
| 173 | Kwiatkowski | Robert P. | | 213 | Mueller | Joan |
| 174 | Lambros | Kathleen | | 214 | Munoz | Luis |
| 175 | Lampard | Marilyn C. | | 215 | Murphy | Marie Irene |
| 176 | Leracz | Edmond | | 216 | Murray | Michael M. |
| 177 | Loftus | James R. | | 217 | Nagle | Jeffery Jon |
| 178 | Logan | Patrick | | 218 | Nakaguchi | Ann M. |
| 179 | Lorenz | John G. | | 219 | Nauer | Donald B. |
| 180 | Lotito | James M. | | 220 | Nieckula | Cynthia |
| 181 | Lucchesi | James | | 221 | Nork | Charles |
| 182 | Maderak | Terry | | 222 | Nyhan | Thomas P. |
| 183 | Madigan | Raymond | | 223 | O'Connor | Margaret |
| 184 | Madsen | Theodore J. | | 224 | Ogarek | Joseph |
| 185 | Majeske | Albert R. | | 225 | Olivieri | Edwin |
| 186 | Majeske | Carol | | 226 | O'Malley | Francis |
| 187 | Makowski | Karen A. | | 227 | Onesto | Philip |
| 188 | Maley | Muriel M. | | 228 | O'Reilly | Bernard |
| 189 | Manning | Jennifer | | 229 | O'Rourke | James A. |
| 190 | Maratto | Kathleen | | 230 | Oskielunas | Adam B. |
| 191 | Mares | Achilles | | 231 | Ott | Roy J. |
| 192 | Martin | Patrick | | 232 | Padar | James R. |
| 193 | Massi | John S. | | 233 | Palmer | Ronald A. |
| 194 | McCann | Kenneth J. | | 234 | Paolello | James |
| 195 | McCarthy | George | | 235 | Paoletti | Grayceanne |
| 196 | McFadden | Robert J. | | 236 | Paoletti | James M. |
| 197 | McGivney | John M. | | 237 | | |
| 198 | McQuaid | Michael J. | | 238 | Parizanski | Paul |
| 199 | Midona | Barbara A. | | 239 | Patt | Corinne |
| 200 | Midona, Sr. | Joseph A. | | 240 | Paulnitsky | Roland |
| 201 | Milam | Mary J. | | 241 | Pemberton | Patrick M. |

| | | | | | |
|---|---|---|---|---|---|
| 242 | Peron | Robert J. | 282 | Sebastian, Jr. | Roy D. |
| 243 | Perovich | Vladimir | 283 | Seils | Richard C. |
| 244 | Pizzo | Angeline | 284 | Selke | Jerome C. |
| 245 | Poedtke | Ronald | 285 | Seyfert | Eugene H. |
| 246 | Poholik | Peter F. | 286 | Seyfert | Judith A. |
| 247 | Polerecky | Robert E. | 287 | Shuman | Bernard |
| 248 | Pontrelli | Darlene | 288 | Signoretti | J. Robert |
| 249 | Ptak | Theodore | 289 | Sloma | Raymond T. |
| 250 | Quinn | Robert F. | 290 | Smith | Charles J. |
| 251 | Quinn | Sylvia A. | 291 | Smith | Deborah K. |
| 252 | Ratledge | Robert D. | 292 | Sobczyk | Jane |
| 253 | Reiter | Mark | 293 | Sowinski | Ronald |
| 254 | Retzke | Gery | 294 | Specht | Robert |
| 255 | Reynolds | Thomas A. | 295 | Spedale | Dominic |
| 256 | Rhoden | Dawn | 296 | Spratt | Doris |
| 257 | Rhoden | Ralph | 297 | Stampnick | Raymond L. |
| 258 | Rieck | Judith | 298 | Staszak | Norbert |
| 259 | Rimkus | Stanley | 299 | Steinmeier | Arthur M. |
| 260 | Rini | Victor | 300 | Strazzante | Charles M. |
| 261 | Riordan | Ann | 301 | Suess | Robert |
| 262 | Rodgers | Audrey | 302 | Sullivan | Michael T. |
| 263 | Rohloff | Richard P. | 303 | Sutor | Yvonne |
| 264 | Rooney Sr. | Patrick F. | 304 | Swiatkowski | Daniel |
| 265 | Roscich | Anthony M. | 305 | Szparkowski | Debra |
| 266 | Ross | Kenneth C. | 306 | Szparkowski | Gary |
| 267 | Rowan | Karen | 307 | Tapkowski | Roman |
| 268 | Rowan | Michael | 308 | Terrance | Timothy J. |
| 269 | Rowan | Richard | 309 | Thulis | John |
| 270 | Ruback | Charles R. | 310 | Tobuch | Lawrence J. |
| 271 | Rumsfeld | Alma | 311 | Tolley | John F. |
| 272 | Ryan | David | 312 | Tomaska | Joseph A. |
| 273 | Sappanos | Thomas | 313 | Tracey | Robert J. |
| 274 | Sarnowski | Ret. Sgt. Robert W. | 314 | Troken | Eugene B. |
| 275 | Sasso | Kathryn | 315 | Utz | Charles A. |
| 276 | Scalise | Anthony J. | 316 | Utz | James J. |
| 277 | Schrager | Daniel V. | 317 | Vitaioli | Kathleen |
| 278 | Schreiner | Angela M. | 318 | Vitaioli | Paul |
| 279 | Schultz | Marshall A. | 319 | Vogt | Vince |
| 280 | Schwab | John | 320 | Vucko | Ralph E. |
| 281 | Schwartz | Gerald | 321 | Wagner | Patricia M. |

| 322 | Webb | James E. |
|---|---|---|
| 323 | Webb | Laura M. |
| 324 | Weber | Matthew E. |
| 325 | Weiner | Ben |
| 326 | Welninski | Anthony |
| 327 | Whalen | Thomas Michael |
| 328 | White | Glenn L. |
| 329 | White | Ralph |
| 330 | Wiberg | Wayne A. |
| 331 | Winter | Joyce A. |
| 332 | Wolanski | John |
| 333 | Wolfe | Joseph |
| 334 | Woody | Lorraine |
| 335 | Yablong | Phil H. |
| 336 | Young | Phillip P. |
| 337 | Zolna | Clifford A. |
| 338 | Zurawik | James E. |
| 339 | Zurawski | James J. |

*Underwood v. City of Chicago*, 2023 IL App (1st) 211317

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 13-CH-17450; the Hon. Neil H. Cohen, Judge, presiding. |
| **Attorneys for Appellant:** | Clinton A. Krislov and Kenneth T. Goldstein, of Krislov & Associates, Ltd., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Mary B. Richardson-Lowry, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), for appellee. |